## UNIVERSAL CREDIT CO. v. CUSHING MOTOR CO. et al.

No. 28232.    May 10, 1938.

Rehearing Denied June 7, 1938.

Pierce, McClelland, Kneeland & Bailey, for plaintiff in error.

Geo. R. Taylor, for defendants in error.

PHELPS, J. The defendants, an attorney and his wife, who will hereinafter be referred to in the singular, purchased an automobile from Cushing Motor Company, pursuant to certain written instruments which they had signed. One of the instruments was a conditional sale contract. Said contract was assigned by the motor company to the plaintiff, Universal Credit Company. A default ensued, and plaintiff instituted this action in replevin for recovery of the automobile. The case was tried in the county court without a jury, the trial judge made certain findings of fact and conclusions of law and entered judgment for the defendants, from which the plaintiff appeals.

In stating the facts of the case we omit many immaterial and irrelevant portions of the evidence which have been emphasized by the defendants, and base our discussion and conclusions only on those portions thereof which are controlling of the case, which portions are composed of the defendants' competent evidence viewed in its aspect most favorable to defendants, plus the undisputed evidence adduced by the plaintiff.

Prior to November of 1934, the defendant Geo. R. Taylor had acted as attorney for Cushing Motor Company for many years. He was familiar with the company's manner of doing business, and with the fact that the motor company financed its automobile papers through and with the plaintiff, Universal Credit Company. On or about November 6, 1934, he purchased from the motor company the last car which it had in stock. He traded in his old car and gave the motor company a note for $135, the old car and said note making up the down payment. That note is not involved in this action.

This left a balance of $535 due on the new car. He executed a conditional sale contract to the motor company, at the top of which was prominently printed "To be sent to Universal Credit Company," wherein he undertook to pay in cash the balance due on said car, the amount stated being $648. The difference between the $535 balance and the $648 set forth in the conditional sale contract represents the finance charge required by the motor company so that it could obtain from the credit company the actual balance due. At the same time the defendant executed and addressed to the plaintiff credit company a "purchaser's statement," descriptive of the financial condition of the defendants.

The plaintiff relied upon the representations made in the contract and in the statement signed by the defendants, which are discussed in detail below, and purchased the contract from the motor company. Within a month or two thereafter, the plaintiff and the motor company ceased dealing with each other, and defaults also occurred in payment on the contract.

The defendant testified that he had a prior oral agreement with the motor company that he was to pay for the automobile by the rendition of legal services from time to time, instead of paying cash installments, and that he had performed sufficient services to extinguish the contract. He was supported in this testimony by the depositions of officers of the defunct motor company. Under the principles of review, we take the fact as established that he did have an antecedent oral agreement with the motor company that he would pay the balance due by the rendition of said services instead of payment in cash. Bearing in mind that such was his oral agreement with the motor company, we now set forth the written agreement which he thereafter signed, the emphasized portions deserving important notice. We shall omit description of the car and other immaterial portions:

"Original—**To be sent to Universal Credit Company.**

"The undersigned seller hereby sells, and the undersigned purchaser hereby purchases on a time price basis, subject to the terms and conditions hereinafter set forth, the following property, complete with standard attachments and equipment, delivery and acceptance of which is hereby acknowledged by purchaser, viz.: * * * (description of car) For $297.90, on or before delivery, leaving a deferred balance of $648, which purchaser promises to pay at **the office of Universal Credit Company** in 18 installments of $36 each on the same day of each successive month and commencing one month from the date hereof, or as indicated in schedule of payments below. * * *

"Payment to Begin December 21, 1934.

"1. Title to said property shall not pass

to the purchaser until all sums due under this contract are fully paid in cash. Remittances in other form than cash are made at the purchaser's risk and shall constitute payment only when honored and when bank drafts or other clearance items in payment thereof are likewise honored. Payments to anyone other than Universal Credit Company do not constitute payment hereunder.

"Time is the essence of this contract and in the event the purchaser defaults on any payment or fails to comply with any condition of this contract * * * this contract shall be in default and the full amount shall immediately become due and payable; * * * Upon any such default, seller or any officer of the law may take immediate possession of said property. * * * Seller's assignee shall be entitled to all the rights of the seller. * * *

"Executed in triplicate, one copy of which was delivered to and retained by the purchaser, this 6th day of Nov., 1934.

"Cushing Motor Co., Seller,
"By H. C. Vineyard, Pres.
"Lola Perry Taylor, Purchaser,
"Geo. R. Taylor, Purchaser,
"833 East Maple St.,
"Cushing, Oklahoma."

On the face of the contract and immediately following the signature of the purchaser is the following printed form, signed by the dealer, addressed to the Universal Credit Company in capital letters:

"To Universal Credit Company

"1. Have you any reasons to believe purchaser violates any laws concerning liquor or narcotics? No.

"2. Was this purchaser's name ever rejected by any other Finance Company, Bank or banker? No.

"The undersigned certifies that said contract arose from the sale of the within described property, warranting that the title of said property was at the time of sale and is now vested in the undersigned free of all liens and encumbrances; that the said property is as represented to the purchaser of said property by the undersigned, and that the statements made by the purchaser on the statement form attached hereto are true to the best of the knowledge and belief of the undersigned. Undersigned warrants that down payment made by purchaser as stated above was in cash and not its equivalent, unless written notice otherwise was given Universal Credit Company, and that no part thereof was loaned directly or indirectly by the undersigned to purchaser; that purchaser is 21 years of age or older; that answers by undersigned to above questions are true and complete. Undersigned makes above representations and warranties for the purpose of inducing Universal Credit Company to purchase above contract. * * *

"Universal Credit Company is hereby authorized to correct patent errors in above contract and other papers executed, or assigned by undersigned in connection therewith.

"For value received, the undersigned does hereby sell, assign and transfer to the Universal Credit Company his, or their right, title and interest in and to the within contract and the property covered thereby, and authorizes said Universal Credit Company to do every act and thing necessary to collect and discharge the same. * * *"

The "Purchaser's Statement," which was filled out and signed by the defendant at the same time as the above contract was signed, specifically states in the beginning that it is addressed "To Cushing Motor Company, Cushing, Oklahoma, and to Universal Credit Company." And furthermore it specifically states that the statement "is offered for the purpose of obtaining credit from the sources first named herein," said sources being both the motor company and the plaintiff. The statement further provides that "I (or we) authorize you and/or the Universal Credit Company, to purchase and place fire insurance" on the car.

The first contention of the plaintiff, stated in substance, is that the trial judge erred in receiving evidence of the prior oral agreement between the defendant purchaser and the motor company. The plaintiff says that this was a violation of the parol evidence rule. Such contention is correct. The case does not come within any of the numerous exceptions to that rule. Section 9456, O. S. 1931, 15 Okla. St. Ann. sec. 137, provides that:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Although in Mackin v. Darrow Music Co., 69 Okla. 1, 169 P. 497, cited by defendant, we held that proof of an independent oral agreement to pay in services instead of cash was not a violation of the parol evidence rule, the contract in that case did not specifically prescribe cash as the medium of payment. The contract in that case merely stated the amount remaining due and did not contain any such provisions as are involved in the instant case. The limitation of the doctrine announced in that case was expressly stated in the opinion itself in the following words:

"* * * if, however, the terms of the oral contract are not in contravention of the terms of the written contract."

In the instant case the terms of the oral contract **are** directly in contravention of the terms of the written contract. The written contract specifically provides, in paragraph 1, that the remainder is to be paid "in cash." It further provides that remittances in other forms than cash are made at the purchaser's risk. It still further provides that "payments to any one other than Universal Credit Company do not constitute payment hereunder." It would be difficult to conceive of an oral agreement more in direct contravention of the written agreement than is involved in the instant case. By the plain language and terms of the contract, a positive and definite agreement is made by the defendant (1) to pay the deferred balance "in cash," (2) to pay said amount "at the office of the Universal Credit Company in 18 installments of $36 each," (3) that title to the property should not pass to defendant until the amount is fully paid "in cash," (4) that remittance in forms other than cash would be made at the purchaser's risk, and (5) that payment to anyone other than the plaintiff would not constitute payment of the contract.

As opposed to such solemn and definite written provisions, the defendant asserts that his prior oral agreement to pay the motor company, and only the motor company, and then only in legal services instead of cash, is not in contravention of the written agreement. The answer is too obvious to require discussion. References to the plaintiff, Universal Credit Company, permeate the entire structure of the contract; the very beginning of the contract specifically states in prominent letters that it is "to be sent to Universal Credit Company"; it repeatedly and emphatically prescribes that payment shall be only in cash and goes to extra lengths to warn the signer of the result of any contrary arrangement or performance. To say that the contract does not in every possible manner prescribe that payment shall be **only** in cash is to say that words have no meaning. And truthfully to say that such provisions in the written agreement are not directly contradictory to the prior oral agreement is an impossible feat which we shall not attempt. The case does not come within the rule of the Darrow Music Company Case, supra, and we refuse further to extend the limitations of that case.

Excluding such evidence, the undisputed evidence in the record makes a clear case for the plaintiff, and judgment should be rendered for plaintiff for that reason alone.

The defendant says, however, that this conditional sale contract was a nonnegotiable instrument and that defenses which would be available to him if the motor company had sued him are available as against the motor company's assignee, the plaintiff. But this is merely evading the question, as we view the situation, for even if the motor company had sued him, the parol evidence rule would likewise have prevented the introduction of evidence tending to establish such prior contrary oral agreement, no fraud being alleged. When it was so clearly and repeatedly provided in the written contract that payment should be made only in cash, then that was the agreement, and regardless of whether the motor company or its assignee sues on such a contract, the parol evidence rule forbids establishment of a prior oral agreement directly in contravention thereof.

The plaintiff's second proposition is also meritorious. Therein it is asserted that, since the defendant knew that the contract might be assigned to the plaintiff, and since the defendant had made express representations in the body of the contract that he would pay only in cash, he should be estopped to assert that the purchase price should be paid in services. The fact of said representations clearly appears from the face of the contract. The contract speaks for itself. The evidence is undisputed that the plaintiff relied upon said representations, and parted with its money by reason thereof. If the oral agreement was the true understanding, then the written representation was false. The solemn written agreement signed by defendant by its own terms provided that the balance was to be paid in cash, and only at the office of the plaintiff, and to the plaintiff. The language of the instrument estops the defendant from contending that the car was to be paid for by the rendition of legal services. It is useless for defendant to disclaim knowledge of such fact when the instrument recited that it was to be sent to the plaintiff, and that payment was to be made only in cash at the office of the plaintiff. Add to this the financial statement executed by the defendant as a part of this same transaction, and a perfect case of estoppel is made.

Defendant relies upon Universal Credit Company v. National Radio Manufacturing Company, 174 Okla. 178, 49 P.2d 743. There was no prior or contemporaneous oral

agreement involved in that case. There were two written agreements, which were construed under the familiar rule that comtemporaneous written contracts referring to the same transaction will be construed as one contract. Section 9466, O. S. 1931, 15 Okla. St. Ann. 158. We held in that case that estoppel could not be asserted by the plaintiff by the "sole" fact that the defendant executed the conditional sale contract. Here we have more than that. The defendant not only signed the contract which showed on its face that it was payable at the office of plaintiff and that it would be assigned to plaintiff, but he furthermore made representations to the plaintiff to induce it to purchase the contract when he executed the "Purchaser's Statement" along with the contract and at the same time. In the National Radio Manufacturing Company Case no purchaser's statement was mentioned or involved. No act on the part of the defendant was considered other than the "sole fact" of the execution of the conditional sale contract. It will furthermore be noted that nowhere in the decision in that case did the court consider the above discussed provisions in the contract, to the effect that the money was to be payable only at the office of plaintiff, or the further provision that payment to anyone other than plaintiff would not constitute payment. The decision makes no mention of any such agreements in the contract.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the plaintiff, the value of the automobile having been stipulated by the parties at the beginning of the trial.

BAYLESS, V. C. J., and CORN, GIBSON, and HURST, JJ., concur.